John K. Olson, Judge United States Bankruptcy Court
THIS CASE came before the Court for a hearing on June 12, 2019, upon this *74 Court's Order to Show Cause Why Attorney Maite Diaz Should Not Be Sanctioned, Directing Compliance With Prior Order, and Setting Hearing for June 12, 2019 [ECF 58]. Present at the hearing were Attorney Maite Diaz, her counsel Ramon de la Cabada, the Debtor's Chapter 7 Trustee, Leslie S. Osborne, and Steven Schneiderman, counsel for the United States Trustee. Pursuant to prior order, on May 31, 2019, Attorney Maite Diaz produced a bankers box of files to the Court, and the Court has exhaustively reviewed those submitted files. Unfortunately, the Court has opened Pandora's Jar,[1] has thereby become aware of a multitude of extremely serious violations, and is accordingly forced to take extremely serious measures in response.
The discovery of the issues at hand began when the Chapter 7 Trustee filed an adversary proceeding on August 20, 2018, against the Debtor Aldo Pina seeking to revoke his Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2), (3), and (4).[2] In the complaint [ECF 1 in that adversary proceeding], the Chapter 7 Trustee asserts, among other things, that:
9. The Debtor's tax return indicates that he received a tax refund for the 2017 tax year in the amount of $9,182.00.
10. Pursuant to the Trustee's investigation of the Debtor's assets, it appears that the Debtor received these funds on February 22, 2018, in his bank account, and immediately withdrew $9,000 in cash.
11. There is no information on the Debtor's bankruptcy schedules indicating what happened to that cash nor was any proof provided.
15. An investigation of the Debtor's assets shows that the Debtor purchased a four-bedroom home within 3 years of the bankruptcy filing. The Debtor's schedules indicate the exact amount of $1,000 for household goods and furnishings, with no description given whatsoever.
16. The Debtor's schedules also appear to indicate equity in vehicles in excess of $12,000.
17. The Debtor's schedules indicate virtually no detail making it impossible for the Trustee to determine if the assets listed are accurately disclosed.
18. The Statement of Financial Affairs ("SOFA"), question 9, indicates the Debtor was a plaintiff in a lawsuit within a year of the bankruptcy; however, any claims were not listed on schedule A/B.
19. The Debtor also lists almost $200,000 worth of unsecured debt and virtually no assets to show for it.
20. All of these were items that the Trustee planned on asking the Debtor about at his 341 meeting of creditors.
21. The Debtor failed to attend the 341 meeting of creditors and the Debtor's attorney failed to attend the 341 meeting of creditors.
22. Rather than dismiss the case, the Trustee contacted counsel for the Debtor, from the 341 meeting room, asking why the Debtor and counsel were not present. The attorney simply said they did not plan on proceeding and wanted the case dismissed.
23. Based upon the substantial outstanding questions, the Trustee was unwilling *75 to dismiss the case and no motion to dismiss has ever been filed by the debtor.
24. The actions of the Debtor in this case constitute violations of 11 U.S.C. § 727(a)(2), (3) and (4).
25. The actions of the Debtor in failing to file properly filled-out schedules, provide all financial information to the Trustee or attend his 341 meeting of creditors, constitutes an attempt to hinder, delay or defraud an officer of the estate by concealing or permitting to be concealed property of the Debtor within one year before the date of the filing of the petition and/or property of the estate after the date of the filing of the petition. These actions constitute a violation of 11 U.S.C. § 727(a)(2)(A) and (a)(2)(B).
26. In addition, the Debtor's actions as set forth above constitute concealing or failing to keep and preserve any recorded information, including books, documents, records, papers from which the Debtor's financial condition or business transactions might be ascertained. These actions constitute a violation of 11 U.S.C. § 727(a)(3).
27. The actions of the Debtor, as further described above constitute a knowing and fraudulent withholding from an officer of the estate entitled to possession any recorded information, including books, documents, records and papers related to the Debtor's property or financial affairs. This constitutes a violation of 11 U.S.C. 727(a)(4)(d).
Two days after the filing of this complaint, on August 22, 2018, attorney Maite Diaz moved to withdraw as attorney of record in the main case [ECF 17]. That motion was eventually granted after a hearing on September 25, 2018, and an order granting Ms. Diaz's Motion to Withdraw was entered on September 26, 2018 [ECF 23]. In the meantime, the Debtor proceeded pro se in the adversary proceeding. Discussions among the Debtor, the Chapter 7 Trustee, and Attorney Diaz eventually led the Chapter 7 Trustee to file his Motion for Order to Show Cause and/or for Sanctions against Attorney Maite Diaz [ECF 31] on February 5, 2019. In that motion, the Trustee represented that the Debtor "states that the schedules were not provided to him prior to filing and that he did not sign the schedules that were actually filed" [ECF 31, ¶ 22]. In addition to this incredibly alarming statement, the trustee also asserted:
[t]here are other problems with the schedules that the trustee believes should have been addressed. While not all errors can be attributed to Ms. Diaz, the following should not have occurred: 1) failing to obtain, or even ask for a continuance [of the section 341 meeting of creditors]; 2) failing to obtain all information required prior to filing a bankruptcy; 3) filing a short-form petition three months after being retained; 4) filing schedules that the debtor has never seen; and 5) failing to make changes to the schedules that Ms. Diaz' own notes say need to be made. Had this case been handled properly, it appears unlikely that a § 727 action would have been filed against this debtor [ECF 31, ¶ 29-30].[3]
*76 The Court directed a response from Attorney Diaz by Order [ECF 32], and Attorney Diaz, through counsel, filed a Response [ECF 38] on February 20, 2019. The Response largely asserted attorney-client confidentiality issues.
The Court conducted an evidentiary hearing on the Order to Show Cause [ECF 32] on April 3, 2019. At that hearing, the Debtor (then represented on a pro bono basis by Attorney Elias Dsouza)[4] waived all attorney-client privileges, and both the Debtor and Attorney Diaz testified at the hearing. As a result of evidence introduced at that hearing, the Court found that the Debtor had not, in fact, signed the Schedules and Statement of Financial Affairs [ECF 12] filed by Attorney Diaz on May 30, 2018. Rather, the Debtor had signed draft schedules and related documents during a meeting with Attorney Diaz some three months earlier. The Debtor had neither seen nor approved the Schedules and Statement prior to their filing, let alone signed them. The Court was given the distinct impression from Attorney Diaz's testimony that this was not a one-off occurrence, and that in fact it was Attorney Diaz's standard operating procedure to have clients sign preliminary draft schedules, etc., but that such documents were later "amended" by Attorney Diaz and never seen by her clients before they were filed with the Court electronically via the Case Management/Electronic Case Files system ("CM/ECF").[5]
Accordingly, and to get an understanding of the facts regarding Attorney Diaz's practices, the Court entered its Order [ECF 51] Directing Attorney Maite Diaz to Produce Certain Documents Pursuant to Local Rule 5005-4(C) on April 10, 2019. That Order provided, in relevant part:
1) Attorney Maite Diaz is DIRECTED to produce to the Bankruptcy Clerk's Office addressed to Judge Olson copies of Original Signed Documents pursuant to Local Rule 5005-4(C)[6] as follows:
a. Attorney Diaz shall produce copies of full petitions and all schedules and statements of financial affairs, if filed separately from the petition, signed by Debtors in each of the cases in which Attorney Diaz filed the petition since January 1, 2017, together with the ECF docket entry numbers of each document.
b. Attorney Diaz shall produce the first page of any other document required by Local Rule 5005-4(C) and the signature page, if that page is separate, in each of the cases in which Attorney Diaz filed the petition since January 1, 2017.
c. Attorney Diaz shall produce information in subsections (a) and (b) in one manila folder per case, with the folder labeled with the appropriate case number, and that production shall be delivered to the Bankruptcy Clerk's Office on or *77 before May 3, 2019. Attorney Diaz may proceed with a "rolling production" and produce documents as she prepares them, but no document will be accepted after May 3, 2019.
To the Court's shock and dismay, Attorney Diaz complied with none of the instructions given to her in the Order. Not a single document was produced. No request for an extension of time was made. Instead, Attorney Diaz through her counsel Ramon de la Cabada filed Attorney Maite Diaz's Response [ECF 57] to Court's Order to Produce [ECF 51] on May 2, 2019. It recites, in relevant parts, as follows [sic throughout]:
Attorney Diaz analyzed her business practices in order to properly respond to the Court's inquiry during the April 3, 2019 regarding her compliance with Local Rule 5005-4(C), and determine whether an admission would be possible in order to save the Court from performing a time consuming review of over 100 filings.... [S]he acknowledges an error in her procedure because in many instances, the original signatures of the clients are on documents that are not the ones being filed and the schedules and statements in the filings have slight variations from those contained in the signed documents. [Emphasis added.]
***
While each file contains documents signed by the client, due to an error in office procedure, which will be explained, and ignorance to a requirement, the schedules and statements in the filings, in most instances, will not be exact with the documents signed by the client. [Emphasis added.]
It is the customary practice of Attorney Diaz to meet with the client and have them sign forms containing the schedules and statements. If new information is found at that signing, it has been the practice of Attorney Diaz to not require the client to come back to the office to re-sign the filing unless there are significant changes to the information listed which would materially alter the filing.
As a result of this motion and the inquiry of the Court, Attorney Diaz has implemented changes to office procedures in order to comply and allay any concerns.
Previous business practice - Step by step review of petition with client which most of the time occurred prior to pre-filing credit counseling. After review was completed, the client would sign that version of the petition, and would receive instructions as to any other documentation which would be needed and then await for them to take the required course. Once the case was filed, the client was asked to update any missing bank statements and pay stubs through the date of filing. If necessary, amendments were made so that figures would conform.
New business practice - Clients are sent to the course information earlier so that they may take the course earlier in the process and in advance of our meeting. If the class has not yet been attended, the signing appointment is moved. If anything is missing at the signing appointment, the client is either requested to return with the information or a final draft o the petition is sent to the client so that the client may execute electronically prior to the filing and that is reviewed with the client over the telephone to ensure the numbers on the filing date are matching exactly with *78 what is being filed. [Emphasis added.][7]
***
Now that Attorney Diaz is aware that even small changes to a petition could be material, she has made significant changes to her practice in order to avoid this problem in the future. If the numbers change, however slight, clients will execute and sign new documents in order to have an exact match between the signed document by the client and the filed petition.
If the Court deems necessary, Attorney Diaz would be willing to have clients return to her office to re-execute final copies of cases from the past so that they conform exactly to what was filed.
In other words, in response to an order of court directing the production of certain materials, Attorney Diaz herself indicated that there were many instances where the Court's fears of unsworn and unverified schedules, petitions, etc., being filed would be confirmed (but the errors were "slight") however she would not produce those documents as directed. The Court finds that this refusal to produce documents as directed, shrouded under the purported auspices of saving the Court from the "time consuming review of over 100 filings," was in fact a last-ditch effort to keep the lid on Pandora's Jar, a farcical attempt to avoid accountability, and is indicative of bad faith on the part of Ms. Diaz.[8] Furthermore, as indicated throughout, the characterization of the differences between Debtor signed documents and actually filed documents as being "slight" and "not material" is alarmingly and categorically false.
Upon consideration of Attorney Diaz's failure to produce as directed, and her non-compliant response in lieu of production [ECF 57], the Court entered another Order to Show Cause [ECF 58], directing the following:
1. Attorney Diaz shall produce all of the documents required to be produced by this Court's Order [ECF 51], and to produce them in the manner directed by that Order. All documents are to be produced on or before May 31, 2019.
2. Attorney Diaz shall show cause in writing, on or before May 31, 2019, why she should not be held in contempt for failure to comply with the requirements to turn over documents as set forth in the Order [ECF 51].
3. Attorney Diaz shall show cause in writing, on or before May 31, 2019, why her proposed "New business practice" does not violate the terms of Local Rule 5005-4(C).
4. Pursuant to the provisions of Federal Rule of Bankruptcy Procedure 9011(c)(1)(B), Attorney Diaz shall show cause in writing, on or before May 31, 2019, why her filing of the Debtor's Schedules and Statement of Affairs [ECF 12], which had never been seen by the Debtor and were not verified or affirmed by him, does not constitute a representation to the Court which violates Bankruptcy Rule 9011(b)(3).
*79 5. Pursuant to the provisions of Federal Rule of Bankruptcy Procedure 9011(c)(1)(B), Attorney Diaz shall show cause in writing, on or before May 31, 2019, why her filing in "over 100 filings" of schedules and statements of affairs which had never been seen by the debtor and were not verified or affirmed by him or her, does not constitute a representation to the Court which violates Bankruptcy Rule 9011(b)(3).
6. Attorney Diaz shall show cause in writing, on or before May 31, 2019, why she should not be required (a) to file notice in each of "over 100 filings" that the schedules and statements of affairs filed in those cases were neither seen not executed by the debtors in those cases, and (b) to file schedules and statements of affairs in each of those cases which have been executed by the debtors.
7. Pursuant to the provisions of Local Rule 2090-2(B)(1), Attorney Diaz shall show cause in writing, on or before May 31, 2019, why she should not be suspended from practice before the court, reprimanded or otherwise disciplined.
8. The Court will conduct an evidentiary hearing on this Show Cause Order on June 12, 2019 at 1:30 p.m. at the United States Bankruptcy Court, 299 East Broward Blvd., Courtroom 301, Fort Lauderdale, FL 33301. Attorney Diaz is directed to appear at that hearing.
The Production of Documents
On May 31, 2019, a banker's box of documents was delivered to the Clerk's office, and then taken into chambers.[9] The Court thoroughly reviewed those documents, and what was revealed was absolutely appalling. As a preliminary matter, on April 10, 2019, Attorney Diaz was directed to produce documents from "each of the cases in which Attorney Diaz filed the petition since January 1, 2017" in one manila folder per case. This directive encompasses 123 cases. However, only 121 manila folders were produced. Upon further examination, this was not the result of Attorney Diaz accidentally failing to produce two files; rather, Attorney Diaz produced 15 cases that were filed after the April 10, 2019, order. These cases were not requested by the Court, and the Court considers their production to be irrelevant and burdensome to the review. This leaves the Court with a situation where 17 cases requested were completely omitted from the document production.
The Omitted Production
Attorney Diaz failed to produce 17 cases. Of course, the Court cannot tell if the schedules and other documents in the case have been sworn to and verified by the Debtor. The Court has reason to believe that, consistent with standard procedure for Attorney Diaz, they were not. These cases are as follows:
1. 17-13253-JKO In re Edilma C. Florez
2. 17-21294-RBR In re Althea McGibbon
3. 18-15971-JKO In re Marivi Jacinto
4. 18-23042-LMI In re Donna M. Henry
5. 19-11618-RBR In re Tulani Diaz
6. 17-20630-JKO In re Marie Pierre *80 7. 17-21291-JKO In re Romulo Tejero
8. 17-21678-AJC In re Carlos Hernandez and Lisa Hernandez
9. 17-22701-JKO In re Yoan Ramon Pupo
10. 18-10253-MAM In re Devon L. Foster
11. 18-12964-JKO In re Susan Deknegt
12. 18-13135-RBR In re Stella Rodriguez
13. 18-13689-EPK In re Margarita Portela Wiegandt
14. 18-20509-JKO In re Shineeja Thachanatt
15. 17-17619-JKO In re Kevin Douglas Ambush and Carolyn Yvonne Ambush
16. 17-10278-JKO In re Carmen Luna
17. 18-10654-JKO In re Julio Pineda
With these cases, the original signed documents may exist, and the failure to produce them may be intentional or inadvertent.[10] Or, on the other hand, the original signed documents may not exist, which would either indicate a lack of adequate record keeping by Attorney Diaz or a deliberate withholding or destruction of evidence. The Court does not know why Attorney Diaz failed to produce these cases. The Court was deprived of performing any analysis for the purposes of this Order regarding these cases by Attorney Diaz. Upon consideration, the Court supposes that Attorney Diaz may have purposefully omitted these files because they reflect especially poorly upon her, above and beyond the horrors produced in the banker's box.
One case, 17-10278-JKO In re Carmen Luna, stands out in particular to the Court, as it was in connection with that case that Attorney Diaz was before this Court on a peculiar and memorable Order to Show Cause. On May 10, 2017, the Court entered an Order to Show Cause as to why Attorney Diaz should not be sanctioned, reprimanded, or otherwise disciplined because of an expressed concern for her general method of practice, and specifically because she delayed several weeks before uploading proposed orders to CM/ECF after motions were granted at a hearing.[11] The Court noted at an initial hearing that it is "so frustrating when I have a lawyer who I think is competent to do this work that does not demonstrate this on a regular basis." This situation was preceded by many instances of Attorney Diaz failing to upload an order within the required time following a hearing at which her motion was granted.
The Court entered an Order [ECF 31 in that case], which stated in pertinent part:
Attorney Diaz is hereby DIRECTED to file a Comprehensive Status Report on or before May 3, 2017, which will include the following: a list of every open case and case closed within the last year in this District where Attorney Diaz is listed as the attorney of record. With each case, Attorney Diaz will provide the Court with her last action in the case, and whether or not a proposed order is pending from her office. If a proposed order is found to be pending, then Attorney Diaz is DIRECTED to immediately upload the proposed order via CM/ECF, indicate the date that the matter came on for hearing, and indicate the date that the proposed order was uploaded... If the Comprehensive Status Report provides information that suggests *81 Attorney Diaz is unable to competently practice before this Court, then Attorney Diaz will be suspended for a period of time to be determine at the continued show cause hearing.
The Court took that action in an effort to assist Attorney Diaz with getting her practice under control, which was obviously and admittedly unwieldy for her at the time. Ms. Diaz's response to the Court's order was reflective upon the fact that she is a sole practitioner with no assistance in her office. Specifically, she expressed "I don't like to make excuses for myself because my practice is my own." At the hearing following the submission of the Comprehensive Status Report, she apologized and expressed gratitude to the Court, noting that it was a useful exercise and she would make it a point to clean up her practice and "slow down."
In the end, and although the Comprehensive Status Report revealed 19 pending orders that Attorney Diaz had failed to submit, the Court discharged the Order to Show Cause and did not suspend Attorney Diaz. In retrospect, if the Court had suspended her at that point, perhaps she would have taken an overall review of her practice after taking a short suspension, changed her ways of practice, and the situation now before the Court could have been avoided.
The Actual Production
Attorney Diaz produced 121 manila folders, but only 106 were actually responsive to this Court's directive. Nevertheless, the court analyzed the 121 cases produced by Ms. Diaz after determining what she had actually produced. The cases that were produced suffered from a wide variety of deficiencies, as outlined below. In many instances, complete schedules were not produced.[12] Exemptions were not claimed. Dollar amounts were often listed as $0. Unsecured creditors were often non-existent. Secured claims were often not included. It appears as if, in some instances, the debtor signed basically blank schedules but for a few entries. The spreadsheet below examines whether or not the production of a certain file was complete or not, and the days between the debtor's original signature and the purported signature on the electronically filed documents on CM/ECF.
*82 Case Complete Days 18-22794-RAM No 28 17-14768-JKO No 26 17-20285-AJC Yes 34 18-24211-RBR No 25 17-12567-MAM No 208 17-13272-LMI Yes 26 18-21064-RBR No 145 17-15184-RMR Yes 12 19-14850-RBR No 0 18-18307-JKO No 33 19-10360-RBR No 166 19-16268-JKO No 0 19-16272-JKO No 17 19-15917-RBR No 16 19-15916-RBR Yes 3 19-15915-RAM Yes 12 19-15914-RAM No 0 19-14953-RBR Yes 1 18-11281-RBR No 88 19-14951-RBR Yes 8 19-14894-RBR Yes 5 19-14893-RBR Yes 4 19-14892-JKO No 4 19-14888-JKO Yes 4 19-14887-RBR Yes 5 19-14659-JKO Yes 0 19-14461-JKO Yes 3 19-13635-AJC No 103 19-12206-JKO No 6 *83 19-12159-JKO Yes 0 19-11837-LMI No 0 19-11602-RBR No 136 19-11600-JKO No 0 19-11555-JKO No 3 19-11546-JKO Yes 5 19-10927-RBR No 10 19-10245-RBR Yes 5 19-10359-JKO No 14 18-24694-RBR No 12 18-24087-RBR No 10 18-24274-JKO No 15 18-24705-RBR Yes 0 18-23075-RBR No 182 18-22849-AJC No 80 18-22847-LMI No 141 18-22846-LMI No 37 18-22844-RBR Yes 0 18-21066-JKO No 0 18-21063-RBR No 154 18-20508-JKO No 153 18-20113-JKO Yes 34 18-20112-RBR No 132 18-19787-RBR Not produced Never filed 18-18315-JKO No 90 18-17017-JKO No 201 19-12846-RBR No 18 18-19677-JKO No 116 18-19436-JKO No 122 18-18313-JKO Yes 22 18-18311-RBR Yes 304 18-18049-AJC Yes 0 18-17768-JKO No 2 18-17019-JKO No 119 18-16871-RBR No 225 18-15928-JKO No 18 18-14674-EPK No 227 18-13848-RBR No 0 18-13780-RBR No 27 18-13266-JKO Yes 0 18-12973-JKO No 113 18-12966-RBR No 288 18-12763-RBR No 0 18-12139-JKO Yes 47 *84 18-12971-RBR No 164 18-11723-JKO No 82 18-11681-LMI No 14 18-11868-RBR No 164 18-11822-RBR No 47 18-10654-JKO Yes 44 17-19317-RAM No 18 18-10286-RBR No 59 17-24840-JKO Not produced Never filed 17-24585-RAM No 103 17-24463-RBR No 21 17-24095-RBR No 31 17-22215-JKO No 43 17-22003-RBR No 9 17-21448-RBR No 85 17-21447-JKO Yes 30 19-10921-RBR No 27 17-21420-RBR No 0 17-21446-JKO No 516 17-21445-JKO No 59 17-21444-JKO No 51 17-21394-RAM No 3 17-20286-RAM No 22 17-20284-LMI No 15 17-19985-RBR Yes 42 17-19885-JKO Yes 0 17-19097-RBR No 0 17-18633-JKO Yes 22 17-18406-JKO Yes 0 17-17816-RBR No 0 17-17797-JKO Yes 24 17-17796-RBR No 21 17-17484-RBR No 107 17-17106-RBR Yes 83 17-16956-RBR No 32 17-16874-RBR No 20 17-16507-RBR No 97 17-14558-JKO No 0 17-12148-JKO No 69 17-11923-AJC No 16 17-11835-RBR No 14 17-11353-RBR No 6 17-10574-LMI Yes 8 17-10515-JKO Yes 40 *85 17-10410-RBR No 31 17-10203-RBR No 20 17-10200-RBR No 52 17-10204-JKO Yes 0
In 84 cases, or almost 70% of her produced files, Attorney Diaz failed to produce complete records as directed by this Court. Attorney Diaz filed these cases an average of over 53 days after the debtor signed the original documents in her office. In one case, the debtor signed the original documents 516 days before the documents were actually filed on CM/ECF.
Detailed Inspection
The Court also randomly selected 10 cases for in depth analysis. The "Debtor Signed" column represents documents produced to the Court by Attorney Diaz, and the CM/ECF column represents what was actually filed on CM/ECF. If what was produced by Attorney Diaz matched what was on CM/ECF, as it is required to do, the Court did not include it. If a schedule or document was entirely missing, that document as filed on CM/ECF is produced as an exhibit to this order. The differences between what the debtor actually signed and what was filed on CM/ECF in these cases is shocking.
Detailed Case Analysis 1: In re Rene Pazmino
18-22794-RAM Date Petition Filed: 10/15/2018 • Debtor-signed schedules omit over $1,000,000 in debt that appear on CM/ECF. Debtor Signed CM/ECF Schedule A/B: What is the property: not listed Property What is the property: single family home Part One Section 1.1 value: $290,385 Property value: $365,000 Part One Section 2 Total: $724,128 Total: $798,743 Part Two Section 3 Ford Pickup: $2,475 Ford Pickup: $1,000 Part Three Section 6 Household goods and furnishings: $0 Household goods and furnishings: $1,000 Part Three Section 7 Household electronics: $0 Household electronics: $100 Part Three Section 15 Total: $50 Total: $1,150 Part Four Section 16 Cash: $0 Cash: $20 Part Four Section 36 Total: $0 Total: $20 Part Eight Section 55 Total real estate: $724,128 Total real estate: $798,743 Part Eight Section 56 Total vehicles: $2,475 Total vehicles: $1,000 Part Eight Section 57 Total personal and household items: $50 Total personal and household items: $1,150 Part Eight Section 58 Total financial assets: $0 Total financial assets: $20 Part Eight Section 62 Total personal property: $2,525 Total personal property: $2,170 Part Eight Section 63 Total of all property listed in Schedule Total of all property listed in Schedule A/B: $726,653 A/B: $800,913 Schedule C: NO EXEMPTIONS LISTED See Exhibit 1.1 Part One Section 2 Schedule D: NOTPRODUCED See Exhibit 1.2 Schedule E/F: NOTPRODUCED See Exhibit 1.3 Schedule I: Net income from rental property and from Net income from rental property and from Part Two Section 8a operating a business, profession, or farm: operating a business, profession, or farm: $6,570 $6,770 Part Two Sections 9, 10, Total monthly income: $6,570 Total monthly income: $6,770 & 12 Schedule J: Monthly income: $6,570 Monthly income: $6,770 Declaration: Signed on October 29, 2018 Signed on November 26, 2018 Statement of Financial Paid another about seeking bankruptcy or Paid another about seeking bankruptcy or Affairs: Part Seven preparing bankruptcy petition: $0 within preparing bankruptcy petition: $2,190 Section 17 year within year Part Twelve Signed on October 29, 2018 Signed on November 26, 2018
*86 Detailed Case Analysis 2: In re Adriana Galvez
17-14768-JKO Date Petition Filed: 4/17/2017 • Debtor-signed schedules omit approximately $160,000 of income from employment or operating a business within the previous two years which appears on CM/ECF. Debtor Signed CM/ECF Schedule A/B: NOTPRODUCED See Exhibit 2.1 Schedule C: NOTPRODUCED See Exhibit 2.2 Schedule D: Creditors with secured claims: four listed Creditors with secured claims: one listed Total: $501,547 Total: $501,547 Schedule I: NOTPRODUCED See Exhibit 2.3 Schedule J: NOTPRODUCED See Exhibit 2.4 Declaration: Signed on April 20, 2017 Signed on May 16, 2017 Statement of Financial Income from employment or from Income from employment or from Affairs: Part Two operating a business during this year or 2 operating a business during this year or 2 Section 4 previous years: No previous years: Yes This calendar year: $14,121.04 Last calendar year: $65,438.46 Two calendar years ago: $82,089 Part Seven Section 16 Paid another about seeking bankruptcy or Paid another about seeking bankruptcy or preparing bankruptcy petition: $0 within preparing bankruptcy petition: $140 within year year Part Twelve Signed on April 20, 2017 Signed on May 16, 2017
Detailed Case Analysis 3: In re Raul Hernan Ochoa
17-20285-AJC Date Petition Filed: 8/14/2017 • Debtor-signed schedules shows a positive net monthly income of $1,756, CM/ECF shows a monthly net income of negative $325. Debtor Signed CM/ECF Schedule A/B: Collectibles of value: "unknown" Collectibles of value: $200 Part Three Section 8 Part Three Section 11 Clothes: "unknown" Clothes: $20 Part Three Section 14 Costume Jewelry: "unknown" Costume Jewelry: $20 Part Three Section 15 Total: $0 Total: $240 Part Eight Section 57 Total personal and household items: $0 Total personal and household items: $240 Part Eight Section 62 Total personal property: $3,422.95 Total personal property: $3,662.95 Part Eight Section 63 Total of all property listed in Schedule A/B: Total of all property listed in Schedule A/B: $114,422.95 $114,662.95 Schedule C: MISSING EXEMPTIONS See Exhibit 3.1 Part One Section 2 Schedule I: Other government assistance regularly Other government assistance regularly Part Two Section 8f received: $842 and $300 received: $0 Part Two Sections 9, Total monthly income: $3,852 Total monthly income: $1,246 10, & 12 Schedule J: Dependent's age: 15 Dependent's age: 12 Part One Section 2 Part Two Section 4c Home maintenance, repair, and upkeep Home maintenance, repair, and upkeep expenses: $194 expenses: $0 Part Two Section 4d Condominium/Homeowner's Association Condominium/Homeowner's Association dues: $0 dues: $149 Part Two Section 6a Electricity, heat, natural gas: $300 Electricity, heat, natural gas: $100 Part Two Section 7 Food and housekeeping supplies: $600 Food and housekeeping supplies: $400 Part Two Section 12 Transportation: $160 Transportation: $80 Part Two Section 22 Monthly expenses: $2,096 Monthly expenses: $1,571 Part Two Section 23 Monthly net income: $1,756 Monthly net income: $-325 Declaration: Signed on July 11, 2017 Signed on August 14, 2017 Statement of Received income this year or two previous Received income this year or two previous Financial Affairs: calendar years: No calendar years: Yes Part Two Section 5 Last calendar year: $7,017 Two calendar years ago: $17,220 Part Twelve Signed on July 11, 2017 Signed on August 14, 2017
*87 Detailed Case Analysis 4: In re Guillermo Valdes
18-24211-RBR Date Petition Filed: 11/15/2018 • Did not produce Schedule D, which lists $95,000 of debt to secured creditor on CM/ECF. Debtor Signed CM/ECF Schedule A/B: Deposits: Yes Wells Fargo: $0 Deposits: Yes Wells Fargo: $20.70 Part Four Section 17 Part Four Section 36 Total: $20 Total: $40.70 Part Eight Section 62 Total personal property: $2,790 Total personal property: $2,810.70 Part Eight Section 63 Total of all property listed in Schedule A/B: Total of all property listed in Schedule A/B: $164,838 $164,858.70 Schedule C: MISSING EXEMPTIONS See Exhibit 4.1 Part One Section 2 Schedule D: NOTPRODUCED See Exhibit 4.2 Schedule E/F: NOTPRODUCED See Exhibit 4.3 Declaration: Signed on October 22, 2018 Signed on November 15, 2018 Statement of Financial Signed on October 22, 2018 Signed on November 15, 2018 Affairs: Part Twelve
*88 Detailed Case Analysis 5: In re Lillian Rosario Stewart
17-12567-MAM Date Petition Filed: 3/2/2017 • Debtor-signed schedules omits homestead valued at $283,000. Debtor Signed CM/ECF Schedule A/B: Own or have legal or equitable interest in Own or have legal or equitable interest in Part One Section 1 any residence, building, land, etc.: No any residence, building, land, etc.: Yes Type of real estate: condominium Property value: $283,000 Part One Section 2 Total: NA Total: $283,000 Part Three Section 6 Household goods and furnishings: No Household goods and furnishings: $800 Part Three Section 11 Clothes: No Clothes: $50 Part Three Section 12 Jewelry: No Jewelry: $50 Part Three Section 15 Total: $0 Total: $900 Part Four Section 16 Cash: $0 Cash: $50 Part Four Section 17 Deposits: No Deposits: Yes Checking account: $713.09 Business bank account: $1,912.57 Part Four Section 36 Total: $0 Total: $2,675.66 Part Eight Section 55 Total real estate: $0 Total real estate: $283,000 Part Eight Section 57 Total personal and household items: $0 Total personal and household items: $900 Part Eight Section 58 Total financial assets: $0 Total financial assets: $2,675.66 Part Eight Section 62 Total personal property: $0 Total personal property: $3,575.66 Part Eight Section 63 Total of all property listed in Schedule Total of all property listed in Schedule A/B: $0 A/B: $286,575.66 Schedule C: NO EXEMPTIONS LISTED See Exhibit 5.1 Part One Section 2 Schedule D: NOT PRODUCED See Exhibit 5.2 Schedule E/F: NOT PRODUCED See Exhibit 5.3 Schedule I: Employment status: employed Employment status: employed Part One Employment information: missing Employment information: listed Part Two Section 8a Net income from rental property and from Net income from rental property and from operating a business, profession, or farm: operating a business, profession, or farm: $0 $11,620.29 Part Two Section 9, Total monthly income: $0 Total monthly income: $11,620.29 10, 12 Schedule J: Electricity, heat, natural gas: $0 Electricity, heat, natural gas: $200 Part Two Section 6 Water, sewer, garbage: $0 Water, sewer, garbage: $50 Telephone, cellphone, internet, etc.: $0 Telephone, cellphone, internet, etc.: $50 Part Two Section 7 Food and housekeeping supplies: $0 Food and housekeeping supplies: $300 Part Two Section 9 Clothing, laundry, and dry cleaning: $0 Clothing, laundry, and dry cleaning: $50 Part Two Section 11 Medical and dental expenses: $0 Medical and dental expenses: $50 Part Two Section 13 Entertainment, clubs, recreation, etc.: $0 Entertainment, clubs, recreation, etc.: $200 Part Two Section 21 Other: $0 Other: $120 Part Two Section 22 Monthly expenses: $0 Monthly expenses: $1,020 Part Two Section 23 Monthly income: $0 Monthly income: $10,600.29 Declaration: Signed on August 10, 2016 Signed on March 6, 2017 Statement of Financial Income from employment or from Income from employment or from operating Affairs: Part Two operating a business during this year or a business during this year or two previous Section 4 two previous years: No years: Yes (but no $ amounts listed). Part Seven Section 16 Paid another about seeking bankruptcy or Paid another about seeking bankruptcy or preparing bankruptcy petition: $0 preparing bankruptcy petition: $690 Part Twelve Signed on August 10, 2016 Signed on March 6, 2017
*89 Detailed Case Analysis 6: In re Donna Henry
17-13272-LMI Date Petition Filed 3/18/2017 • Debtor-signed schedules omits value of homestead ($198,000), value of vehicles ($11,550), and omits over $100,000 of income from employment or operating a business within the last two years. Debtor Signed CM/ECF Schedule A/B: Property value: $0 Property value: $198,000 Part One Section 1,1 Part One Section 2 Total, $0 Total: $198,000 Part Two Section 3 2006 Volvo: $0 2006 Volvo $2,750 2012 Mazda: $0 2012 Mazda $8,800 Part Two Section 5 Total: $0 Total: $11,550 Pan Three Section 6 Household goods and furnishings: $0 Household goods and furnishings: $1,000 Part Three Section 11 Clothes $0 Clothes: $50 Part Three Section 15 Total: $0 Total: $1.050 Part Four Section 16 Cash: No Cash: $50 Part Four Section 17 Deposits: Yes Deposits: Yes Savings account: $5 Checking account: Savings account: $5 Checking account: $10.000 $5,866.27 Part Four Section 21 Retirement or pension accounts: 401k Retirement or pension accounts 401k through employer Milliman $130,000 through employer Milliman $145,852.86 Part Four Section 36 Total: $140,005 Total: $151,774,13 Part Eight Section 55 Total real estate: $0 Total real estate: $198,000 Part Eight Section 56 Total vehicles: $0 Total vehicles: $11,550 Part Eight Section 57 Total personal and household items: $0 Total personal and household items: $1.050 Part Eight Section 58 Total financial assets: $140,005 Total financial assets: $151,774.13 Part Eight Section 62 Total personal property: $140.005 Total personal property: $164.374.13 Part Eight Section 63 Total of all properly listed in Schedule Total of all properly listed in Schedule A/B: $140.005 A/B: $362,374.13 Schedule C: MISSING EXEMPTIONS See Exhibit 6.1 Part One Section 2 Schedule D: Secured claims: Long Beach Acceptance Secured claims: Seterus Inc Part One Section 2 Ocwen Loan, and Seterus Inc Total: Total: $277.162 $277,161 Schedule E/F: Internal Revenue Service: total claim is $0 Internal Revenue Service, total claim is Part One Section 2.1 and priority claim is $0 $6,000 and priority claim is $6,000 Part Four Section 6b/e Taxes and certain other debts owed to the Taxes and certain other debts owed to the government: $0 government $6,000 Declaration: Signed on March 8, 2017 Signed on April 3, 2017 Statement of Financial Income front employment or from Income from employment or from operating Affairs: Part two operating a business during this year or a business during this year or two previous Section 4 two previous years: No years Yes This calendar year $20.525.29 Last calendar year $87,191.30 Part Twelve Signed on March 8, 2017 Signed on April 3, 2017
*90 Detailed Case Analysis 7: In re Alexandra Ocampo
18-21064-RBR Date Petition Filed: 9/10/2018 • Debtor-signed schedules list zeros for all income and expenses. Debtor Signed CM/ECF Schedule A/B: 2011 Nissan: $7,000 2011 Nissan: $4.000 Part Two Section 3 2008 Nissan: $4.500 2008 Nissan: $2.500 Total; $11.500 Total $6.500 Part Four Section 17 Deposits: yes Deposits: Yes Other financial account: $0 Other financial account. $13.63 Part Four Section 36 Total: $50 Total: $63.63 Part Eight Section 56 Total vehicles $11,500 Total vehicles: $6.500 Part Eight Section 58 Total financial assets: $50 Total financial assets. $63.63 Part Eight Section 62 Total personal property: $12,100 Total personal property: $7,113.63 Part Eight Section 63 Total of all property listed in Schedule Total of all property listed in Schedule A/B: $12.100 A/B $7,111.63 Schedule C: 2011 Nissan $7.000 current value, 2011 Nissan: $4,000 current value. Part One Section 2 $1,000 amount of the exemption claimed $0 amount of the exemption claimed 2011 Nissan $7,000 current value, 2011 Nissan: $4,000 current value, $4,000 amount of the exemption claimed $4.000 amount of the exemption claimed 2011 Nissan: $7,000 current value. 2011 Nissan: $4,000 current value, $0 amount $1,000 amount of the exemption claimed of the exemption claimed "118417": $2,500 current value, $1,000 amount of the exemption claimed "118417": $2,500 current value, $1,000 amount of the exemption claimed Schedule D: NOT PRODUCED See Exhibit 7.1 Schedule E/F: NOT PRODUCED See Exhibit 7.2 Schedule I: Gross income: $0 Gross income $3,092.72 Part Two Section 4 Part Two Section 5 Tax, Medicate, and social security Tax Medicare, and social security deductions: $0 deductions $555.90 Insurance deductions: $0 Other deductions, Insurance deductions $128.92 $0 other deductions: $1.80 Part Two Section 6 Total pay roll deductions. $0 Total pay roll deductions $686.62 Part Two Section 7 Total monthly take-home pay: $0 Total monthly take-home pay: $2,406.10 Part two Sections 10&12 Total monthly income: $0 Total monthly income. $2.406.10 Schedule J: Rental or home ownership expenses for Rental or home ownership expenses for Part Two Section 4 residence: $0 residence $1,080 Part Two Section 6 Telephone, cell phone, internet. etc: $0 Telephone, cell phone. Internet, etc, $150 Part Two Section 7 Food and housekeeping supplies: $0 Food and housekeeping supplies: $500 Part Two Section 9 Clothing laundry, dry cleaning: $0 Clothing, launch dry cleaning: $50 Part Two Section 10 Personal care products and services: $0 Personal care products and services $50 Part Two Section 11 Medical and dental expenses: $0 Medical and dental expenses: $50 Part Two Section 12 Transportation $0 Transportation $150 Part Two Section 13 Entertainment. Clubs, recreation, etc.: $0 Entertainment, clubs, recreation, etc.: $50 Part Two Section 15 Vehicle insurance: $0 Vehicle insurance: $100 Part Two Section 21 Other: $0 Other bank fees $100 Part Two Section 22 Monthly expenses: $0 Monthly expenses $2.280 Part Two Section 23 Monthly income. $0 Monthly income: $126.10 Declaration: Signed on April 28, 2018 Signed on September 20, 2018 Statement or Financial Signed on April 28, 2018 Signed on April 20, 2018 Affairs: Part Twelve
*91 Detailed Case Analysis 8: In re Marivi Jacinto
17-15184-RBR Date Petition Filed: 4/26/2017
• Debtor-signed schedules omits $124,377 of income from employment or operating a business within the last two years.
Debtor Signed CM/ECF Schedule A/B: Deposits: yes Deposits: yes Part Four Section 17 Savings account: $5 Checking account: Savings account: $55.03 Checking account: $136.81 Chase account: $1,202.80 $1,815.32 Chase account: unknown Chase account: $1,202.80 Part Four Section 36 Total: $18,825.07 Total: $22,070.09 Part Eight Section 58 Total financial assets: $18,825.07 Total financial assets: $22,070.09 Part Eight Section 62 Total personal property: $33,645.07 Total personal property: $36,890.09 Part Eight Section 63 Total of all property listed in Schedule Total of all property listed in Schedule A/B: $425,645.07 A/B: $428,890.09 Schedule I: Debtor 2 or non-filing spouse: Employed Debtor 2 or non-filing spouse: Employed Part One at Monitor Tech for 7 years at H&M Builders for 1 month Part Two Section 2/4 Monthly gross wages, salary, and Monthly gross wages, salary, and commissions for Debtor 1: $6,586.22 commissions for Debtor 1: $5,064.15 Monthly gross wages, salary, and Monthly gross wages, salary, and commissions for Debtor 2 or non-filing commissions for Debtor 2 or non-filing spouse: $2,741.79 spouse: $2,693.28 Part Two Section 5a Tax, Medicare, and Social Security Tax, Medicare, and Social Security deductions: Debtor 1 $1,768.94 and Debtor deductions: Debtor 1 $864.62 and Debtor 2/non-filing spouse $315.56 2/non-filing spouse $293.03 Part Two Section 5b Mandatory contributions for retirement Mandatory contributions for retirement plans: Debtor 1 $0 plans: Debtor 1 $253.21 Part Two Section 5e Insurance: Debtor 1 $0 Insurance: Debtor 1 $516.83 Part Two Section 5h Other deductions: "cafe" with different Other deductions: "disab" with different descriptions and numbers descriptions and numbers Part Two Section 6 Total payroll deductions: Debtor 1 Total payroll deductions: Debtor 1 $1,873.92 and Debtor 2/non-filing spouse $1,927.35 and Debtor 2/non-filing spouse $1,102.11 $1,023.42 Part Two Section 7 Total monthly take-home pay: Debtor 1 Total monthly take-home pay: Debtor 1 $4,712.30 and Debtor 2/non-filing spouse $3,136.80 and Debtor 2/non-filing spouse $1,639.68 $1,669.86 Part Two Section 10 Monthly income: $7,241.56 Monthly income: $5,696.24 Schedule J: Electricity, heat, natural gas: $250 Electricity, heat, natural gas: $302 Part Two Section 6 Water, sewer, garbage: $90 Water, sewer, garbage: $100 Telephone, cell phone, internet, etc.: $120 Telephone, cell phone, internet, etc.: $250 Other: $120 Other: $0 Part Two Section 7 Food and housekeeping supplies: $800 Food and housekeeping supplies: $1,000 Part Two Section 11 Medical and dental expenses: $50 Medical and dental expenses: $100 Part Two Section 13 Entertainment, clubs, recreation, etc.: Entertainment, clubs, recreation, etc.: $250 $200 Part Two Section 15c Car insurance: $0 Car insurance: $200 Part Two Section 17a Car payments for vehicle 1: $400 Car payments for vehicle 1: $0 Part Two Section 19 Other payments: $0 Other payments: Pet food $40 Part Two Section 21 Other property expenses: $0 Other property expenses: $30 Part Two Section 22 Monthly expenses: $2,780 Monthly expenses: $3,022 Part Two Section 23 Combined monthly income: $7,241.56 Combined monthly income: $5,696.24 Monthly expenses: $2,780 Monthly net Monthly expenses: $3,022 Monthly net income: $4,461.56 income: $2,674.24 Declaration: Signed on May 4, 2017 Signed on May 16, 2017 Statement of Financial Income from employment or from Income from employment or from operating Affairs: Part Two operating a business during this year or a business during this year or two previous Section 4 two previous years: Yes years: Yes Last calendar year: $101, 968 This calendar year: $15,192.46 This calendar year: $0 Last calendar year: $101,968 Two calendar years ago: $109,185 Part Seven Section 16 Paid another about seeking bankruptcy or Paid another about seeking bankruptcy or preparing bankruptcy petition: $0 preparing bankruptcy petition: $525 Part Twelve Signed on May 4, 2017 Signed on May 16, 2017
*92 Detailed Case Analysis 9: In re Richard Carmenaty
19-14850-RBR Date Petition Filed: 4/15/2019
• Failed to fully produce Schedule E/F, which lists $129,269 in unsecured claims on CM/ECF.
Debtor Signed CM/ECF Schedule E/F: NOT FULLY PRODUCED See Exhibit 9.1
Detailed Case Analysis 10: In re Jason A Hammond
18-18307-JKO Date Petition Filed 7/10/2018
• A near-complete failure to produce. Irrelevant and illegible documents produced.
Debtor Signed CM/ECF Schedule C: NO EXEMPTIONS LISTED See Exhibit 10.1 Part One Section 2 Schedule D: NOT PRODUCED See Exhibit 10.2 Schedule E/F: NOT PRODUCED See Exhibit 10.3 Schedule G: NOT PRODUCED See Exhibit 10.4 Schedule H: NOT PRODUCED See Exhibit 10.5 Schedule I: NOT PRODUCED See Exhibit 10.6 Schedule J: NOT PRODUCED See Exhibit 10.7 Declaration: Signed on June 21, 2018 Signed on July 24, 2018 Statement of Income from employment or from Income from employment or from Financial Affairs: operating a business during this year or operating a business during this year or Part Two Section 4 two previous years: No two previous years: Yes Last calendar year: $168,888 Part Twelve Signed on June 21, 2018 Signed on July 24, 2018
The Standard Operating Procedure
Attorney Diaz's standard procedures were made painfully clear by the in-court testimony of Attorney Diaz, the in-court representations of her counsel, the filings in this case, and a review of the produced materials:
1. Attorney Diaz has a meeting with a client in which she prepares rudimentary draft schedules.
2. The Debtor signs those draft schedules under penalty of perjury.
3. At some later date, Attorney Diaz makes wholesale changes to the draft schedules and other documents.
4. At some later date, often months after the draft schedules were created, Attorney Diaz files the petition on behalf of the Debtor via CM/ECF, representing to the Court that the Debtor has seen, sworn to the accuracy of, and verified those documents.
5. At some later date, often months after the draft schedules were created, Attorney Diaz later files the initial schedules on behalf of the Debtor via CM/ECF, representing to the Court that the Debtor has seen, sworn to the accuracy of, and verified those documents.
6. The Debtors, in fact, have never seen, sworn to, or verified the accuracy of the documents that Attorney Diaz files on their behalf via CM/ECF.
Declaration under Penalty of Perjury
The voluntary petition in every case states in pertinent part, as form language:
I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.
I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment *93 for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.
It is now clear that, on one hand, the Debtor has applied an actual, original signature to a document under penalty of perjury, presumably in the presence of Attorney Diaz. Many parts of that document are blank. On the other hand, the court docket reflects schedules that are vastly different from the ones the debtor actually signed, and yet purport to be "sworn" to under penalty of perjury using a "/s/" electronic signature applied by Attorney Diaz on behalf of the debtor.
The CM/ECF Filing System
This situation would never have been possible had the Court not adopted electronic filing of documents through the CM/ECF system.
Prior practice required the filing of original documents manually signed and verified by the debtor. In this district, local practice required that an original and six copies of all original filings be supplied, and this judge well recalls his years in law practice delivering hand trucks filled with boxes of documents to the Clerk's office. The logistical problems for law firms producing all that paper were enormous. Once deposited with the Clerk, her staff was required to sort, index, and store the resulting files. Many clerical employees were required to perform these tasks, and thousands of square feet of office space were required to store the files.
This district came late to CM/ECF, timing its implementation to coincide with the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act in October 2005.
The benefits were obvious. Most importantly, CM/ECF fulfilled the Bankruptcy Code's requirement in 11 U.S.C. § 107 that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." With CM/ECF, court records can now be freely reviewed in the Clerk's office, and, through PACER, online from anywhere in the world through the payment of a modest fee. Previously, files could be reviewed only from the Clerk's physical records - and if the file was checked out to a judge's chambers, it was simply unavailable to review. Copies could be obtained from the Clerk only by filling out a copy request form and paying a (much larger) copy charge. This judge recalls a sign in a clerk's office in another district stating that "Photocopying is not a priority." And just as pleadings were unavailable for easy review, so too were proofs of claim - a real burden in cases with thousands of claims.
Clerk's office staff engaged in filing, indexing, storing, retrieving, and copying documents became redundant when CM/ECF became effective. Personnel cost reductions have saved the country millions of dollars, and productivity has been significantly enhanced. The space needed to store files, both on site in clerk's offices and in permanent storage off site, likewise became unnecessary. This Court has given back thousands of square feet of redundant office space and substantially reduced the rent paid to the General Services Administration, the U.S. Courts' landlord. Moreover, the environmental hazard caused by the storage of millions of tons of paper has been overcome. Paper stored for long periods, especially in humid climate, allows for the growth of mold and mildew and for its accumulation in the surrounding office and courtroom space. Toxic mold is the result, an effect sometimes referred to as "Southern Courthouse Disease." This accumulation of dangerous mold led the United States Courts to abandon such buildings as the 1933 David W. Dyer Federal Building and United States Courthouse in Miami, now leased by GSA to *94 Miami Dade College under a 115-year, one-dollar-a-year lease, and the 1905 United States Courthouse Building and Downtown Postal Station, sold to the City of Tampa for $1.00. Both buildings are architecturally magnificent, and both were the subject of litigation brought by judicial officers or their descendants alleging dangerous and unsafe working conditions cause by toxic mold, and, in one case, the death of a judge.
All of these problems were cured by the adoption of CM/ECF.
But the utility of CM/ECF is dependent upon the integrity of the lawyers who file papers using the system. The Court and all parties in interest who now review documents online operate on the necessary assumption that a paper signed electronically by a debtor using "/s/" was, in fact, signed under penalty of perjury by the debtor. In other words, we CM/ECF users trust that electronically signed documents were actually signed by the debtor on the date indicated. Ronald Reagan famously used the phrase "trust, but verify" in connection with the signing of the Intermediate-Range Nuclear Forces Treaty with Mikhail Gorbachev in 1987. The origin of the phrase is a Russian proverb, "doveryai, no proveryai" ("trust, but verify").
The case of Debtor Aldo Pina demonstrates the painful failure of trusting without verifying. Once Mr. Pina made the representations that he had neither seen nor signed his schedules filed by Ms. Diaz, this Court felt obliged to verify. And like the oncologist conducting exploratory surgery who finds metastatic cancer, this Court has "peeked and shrieked."
It is noteworthy that both Chapter 7 Trustee Les Osborne and counsel for the United States Trustee Steven Schneiderman stated at the June 12th hearing that they had never had any prior problems with Attorney Diaz. That is because neither of them had ever looked. The Court means no criticism of Mr. Osborne or Mr. Schneiderman; the fact of the matter is that nobody ever looks. The Court is unaware of any request or order ever entered in the Southern District of Florida requiring "the production of original documents for review by the court, a trustee, the U.S. Trustee, or any interested party" under Local Rule 5005-4(C).
But now that the Court has looked, it cannot look away.
Bad Faith
Based upon the production of documents to the Court, and a comparison of these documents to those filed by Attorney Diaz on CM/ECF, the Court finds that the manner and method of production manifests a bad faith attempt to avoid detection of Attorney Diaz's shockingly inadequate and possibly criminal standard operating procedure:
• Attorney Diaz initially refused to produce as directed. When she finally did -
• Seventeen cases were not produced.
• Many cases are missing several schedules entirely.
• Approximately 20 case files included documents that were not required to be produced and/or multiple copies of the same document, in what appears to be an attempt to "stuff" the file in an effort to make that file appear like others. The Court finds the insertion of unrequired and irrelevant documents (and sometimes multiple copies of the same document) an effort to make each manila folder appear from the outside to contain the same quantity of paper, which may have satisfied an extremely cursory review.
• In approximately 10 cases, illegible copies were produced making review *95 and comparison to actual filed schedules on CM/ECF impossible.
• Scattered and disorganized filings in which the documents were produced haphazardly with pages out of order. Tellingly, these types of sloppy files often revealed the greatest differences between the debtor signed documents and the CM/ECF filed documents, whereas files with stapled and organized documents often were "complete" productions (even though there were still a multitude of discrepancies).
• Files were included where the case number on the manila folder did not match the actual case included in the manila folder, complicating review unnecessarily.
Applicable Law
Federal Rule of Bankruptcy Procedure 1008 requires that all schedules and statements must be verified or contain an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Alternatively, such documents may be verified by oath or affirmation pursuant to Bankruptcy Rule 9012.
What we have here is a consistent pattern of practice by Attorney Diaz under which unsworn and unverified schedules and statements have been filed by her in "over 100 filings" since the beginning of 2017. The Court has no reason to believe that this practice began only in January of 2017, or that is not present in all of the cases that Attorney Diaz has ever filed since she filed her first case in this district on August 25, 2008.[13]
Bankruptcy Rule 5005 provides that "[a] court may, by local rule, permit or require documents to be filed, signed, or verified by electronic means.... A document filed by electronic means in compliance with a local rule constitutes a written paper for the purpose of applying these rules, the Federal Rules of Civil Procedure made applicable by these rules, and § 107 of the Code." Section 107 provides that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." Our Court has provided for such local rule in Local Rule 5005-4. Local Rule 5005-4(D) provides in relevant part that "[d]ocuments required to be verified or contain an unsworn declaration that are filed electronically shall be treated, for all purposes (both civil and criminal, including penalties for perjury), the same as though signed or subscribed."
The Schedules and Statement of Financial Affairs filed by Attorney Diaz in this case, and in "over 100" other cases, and very likely many more, are both unsworn and unverified. When asked by the Trustee if he had signed his Schedules, the Debtor Aldo Pina answered honestly that he had not, and that he had never before seen the documents Attorney Diaz filed at ECF 12. Parties in a bankruptcy case, starting with a trustee but including all parties in interest and the Court, rely on schedules and statements. They are the starting point for the evaluation of a debtor's assets and liabilities, and the starting point for the evaluation of a debtor's honesty. If a set of schedules and statements contain falsehoods, they are the starting point for the denial of a debtor's discharge under 11 U.S.C. § 727 or the assertion that the debtor has perjured him- or herself. But without that starting point, the bankruptcy process lacks fundamental integrity. And in the opinion of this Court, the evidence produced in this situation has revealed this it is more likely than not that *96 each and every case that Attorney Diaz has filed similarly lacks fundamental integrity, and the debtors, creditors, judges and other actors in those cases and beyond have a right to know that all of her cases are tainted.[14]
Attorney Diaz's Response suggests that her failure to comply with the requirement set forth clearly in Rule 1008 that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746" is the result of "an error in office procedure" [ECF 57, page 3 of 5] and "of not knowing the proper procedure." [ECF 57, page 5 of 5].
This is mind boggling.
Each electronic filing by Attorney Diaz of documents which she represented were verified but were not constitutes a separate violation of Bankruptcy Rule 9011(b) : by presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances -
1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
3) The allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
4) The denials of factual contentions are warranted on the evidence, or, if specifically so identified, are reasonably based on lack of information and belief.
By passing off schedules and statements as having been verified or executed under penalty of perjury, when they have actually not been, Attorney Diaz has made false representations to the Court within the meaning of Bankruptcy Rule 9011(b). In fact, the Court's most recent order to show cause directed Attorney Diaz to do the following:
1. Attorney Diaz shall produce all of the documents required to be produced by this Court's Order [ECF 51], and to produce them in the manner directed by that Order. All documents are to be produced on or before May 31, 2019.
a. Attorney Diaz failed to produce as required , as discussed above.
2. Attorney Diaz shall show cause in writing, on or before May 31, 2019, why she should not be held in contempt for failure to comply with the requirements to turn over documents as set forth in the Order [ECF 51].
a. Attorney Diaz failed to do so.
3. Attorney Diaz shall show cause in writing, on or before May 31, 2019, why her proposed "New business practice" does not violate the terms of Local Rule 5005-4(C).
a. Attorney Diaz failed to do so.
4. Pursuant to the provisions of Federal Rule of Bankruptcy Procedure 9011(c)(1)(B), Attorney Diaz shall show *97 cause in writing, on or before May 31, 2019, why her filing of the Debtor's Schedules and Statement of Affairs [ECF 12], which had never been seen by the Debtor and were not verified or affirmed by him, does not constitute a representation to the Court which violates Bankruptcy Rule 9011(b)(3).
a. Attorney Diaz failed to do so .
5. Pursuant to the provisions of Federal Rule of Bankruptcy Procedure 9011(c)(1)(B), Attorney Diaz shall show cause in writing, on or before May 31, 2019, why her filing in "over 100 filings" of schedules and statements of affairs which had never been seen by the debtor and were not verified or affirmed by him or her, does not constitute a representation to the Court which violates Bankruptcy Rule 9011(b)(3).
a. Attorney Diaz failed to do so .
6. Attorney Diaz shall show cause in writing, on or before May 31, 2019, why she should not be required (a) to file notice in each of "over 100 filings" that the schedules and statements of affairs filed in those cases were neither seen not executed by the debtors in those cases, and (b) to file schedules and statements of affairs in each of those cases which have been executed by the debtors.
a. Attorney Diaz failed to do so .
7. Pursuant to the provisions of Local Rule 2090-2(B)(1), Attorney Diaz shall show cause in writing, on or before May 31, 2019, why she should not be suspended from practice before the court, reprimanded or otherwise disciplined.
a. Attorney Diaz failed to do so .
8. The Court will conduct an evidentiary hearing on this Show Cause Order on June 12, 2019 at 1:30 p.m. at the United States Bankruptcy Court, 299 East Broward Blvd., Courtroom 301, Fort Lauderdale, FL 33301. Attorney Diaz is directed to appear at that hearing.
a. Attorney Diaz complied with this directive by showing up.
The Response [ECF 66] filed by Mr. de la Cabada on behalf of Attorney Diaz objectively fails to respond to this Court's demands, and it makes material misstatements about the reality of the current situation. For example, paragraph 4 of the Response states "[t]he filing of Debtor's Schedules and Statements of Affairs filed to not constituted a of Rule 90119(b)(3) [sic] because the information provided did have evidentiary support in that it was reviewed by each debtor and any differences with the pleadings were slight and not material and based on communication with Debtor and his/her required documentation." This statement, upon review of the documents, is false, and necessarily leads this Court to believe that Ramon de la Cabada, an attorney with admittedly no experience before the bankruptcy court, honestly had no idea what he was talking about. To consider otherwise would open a whole separate Pandora's Jar, considering how false and misleading the Response is in light of the actual production. It would appear that Mr. de la Cabada's representations in the Response may themselves constitute violations of Rule 9011(b)(3), but the Court declines to consider that question further.
The Response [ECF 66] attempts to compare this situation to a case in Georgia, In re Harmon , 435 B.R. 758 (Bankr. N.D. Ga. 2010) where the court sanctioned several attorneys in a law firm, and the law firm itself, for similar misdeeds.[15] In that *98 case, the court became aware of two situations in which something vaguely similar to this debacle happened at a law firm. By contrast, Attorney Diaz is a solo practitioner, and she is solely responsible for what happens at her firm. And as discussed, the Court has discovered a standard operating procedure apparently present in each and every case that Attorney Diaz has ever filed that is materially illegal.
"This Is The End" [16]
"While Attorney Diaz understands the court's concern, it would be submitted that these errors delineated do not rise to the level of such a high punitive measure of suspension of a solo practitioner when other steps can be taken to allay concerns without potentially creating a legal practice wrecking scenario." [ECF 66, ¶ 7]. The Court disagrees. Based on the production, and the totality of the circumstances from the beginning of this saga, Attorney Diaz does not understand the Court's concern, the errors delineated do rise to the level of such a high punitive measure of suspension, and no other steps can be taken to allay the Court's concerns. Accordingly, and extremely regrettably, the Court has no other choice but to suspend Attorney Diaz for a considerable period of time and to recommend that other entities act to disbar Attorney Diaz from the practice of law entirely.
Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients. Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ; Glatter v. Mroz (In re Mroz) , 65 F.3d 1567, 1574 (11th Cir. 1995) ; Ginsberg, et al. v. Evergreen Security, Ltd. et al. (In re Evergreen Security) , 570 F.3d 1257, 1263 (11th Cir. 2009) (citing In re Walker , 532 F.3d 1304, 1309 (11th Cir. 2008) ). "This power is derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006) (internal citations omitted). Evergreen Security at 1263. A bankruptcy court "may impose sanctions if a party violates a court order or rule." Id. at 1273.
The Eleventh Circuit has held that bankruptcy courts possess inherent authority to impose sanctions and statutory authority to sua sponte "take any action or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a) (2005). Id. at 1263.
Local Rule 2090-2(B)(1) provides:
Upon order to show cause entered by at least one judge, any attorney appearing before the court may, after 30 days' notice and hearing and for good cause shown, be suspended from practice before the court, reprimanded or otherwise disciplined, by a judge whose order to show cause initiated the disciplinary proceedings.
The Order to Show Cause [ECF 32] initiating these disciplinary proceedings against Attorney Diaz was entered on February 6, 2019. Attorney Diaz was directed to produce documents by Order [ECF 51] entered April 10, 2019. A further Order to Show Cause [ECF 58] was entered May 7, 2019. Substantially more than the thirty days' notice provided in Local Rule 2090-2(B)(1) has elapsed.
*99 Attorney Diaz's conduct in connection with these proceedings has reeked of bad faith. She completely failed to comply with the Order [ECF 51] to produce documents, and failed in the substantial ways discussed above to comply with the further Order to Show Cause [ECF 58]. It is impossible to conclude that her failure to comply with these Orders was anything other than willful. Her standard operating procedure similarly reeks of bad faith. Her practice has serious criminal implications.[17] At best, hers is an "empty head but pure heart" defense. But as the Seventh Circuit has succinctly put it, "[a]n empty head but a pure heart is no defense." Thornton v. Wahl , 787 F.2d 1151, 1154 (7th Cir. 1986).
The harm that Attorney Diaz has perpetrated in her practice goes beyond the injury to her clients and to the other parties in interest in her cases. As Chief Judge James J. Robinson of the Northern District of Alabama found in a related context, "[t]he harm goes beyond the immediate parties in interest. The credibility of bankruptcy jurisprudence, including its courts, judges, trustees, and lawyers, is diluted with each fallacious case like these." In re Garrard , 2013 WL 4009324 at *6 (Bankr. N.D. Ala. Aug. 5, 2013).
Attorney Diaz's conduct in this proceeding is intolerable. Her method of practice is grossly incompetent, and there is no reason to believe that it can be made to improve. No amount of continuing legal education could possibly fill the gaps of incompetence demonstrated here.
Which leads to the ultimate question: what is the appropriate remedy here? Attorney Diaz cannot be allowed to practice before this Court. Local Rule 2090-2(B) authorizes a single judge of this Court to "suspend" an attorney and the Court will do so. This Court's Local Rules contain no provision for the disbarment of an attorney for the practical reason that there is no separate bar of the bankruptcy court. Local Rule 2090-1(A)(1) requires, with limited exceptions not applicable here, that an attorney practicing before this Court must "be a member of the Bar of the United States District Court for the Southern District of Florida." In turn, Local Special Rule 1 of the Special Rules Governing the Admission and Practice of Attorneys (the "District Court Special Rules") provides that "[a]n attorney is qualified for admission to the bar of this District if the attorney is currently a member in good standing of The Florida Bar."
This Court concludes that Attorney Diaz is grossly incompetent to practice law in this Court or anywhere else. It will therefore refer Attorney Diaz to the Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance (the "Committee") created by Rule 5 of the District Court Special Rules, pursuant to District Court Special Rule 5(b), which provides in relevant part:
(1) Referral . Any District Judge, Magistrate Judge, or Bankruptcy Judge shall refer in writing to the Committee the name of any attorney he or she has observed practicing law in a manner which raises significant question as to the adequacy of such attorney's ability to represent clients in a competent manner. The referral shall be accompanied by a statement of the reasons why such question is raised.
This Order in its entirety constitutes this Court's statement of the reasons why the question of Attorney's Diaz's competence is raised. The Court's recommendation to the Committee is that it recommend *100 to the District Court that Attorney Diaz be disbarred.
The Court will also refer Attorney Diaz to The Florida Bar with a recommendation that Attorney Diaz be disbarred.
Based upon the foregoing, it is ORDERED :
1) Attorney Maite Diaz is hereby PROHIBITED from filing any new debtor case commencing July 1, 2019 .
2) Attorney Maite Diaz is hereby SUSPENDED FROM PRACTICE before this Court for a period of TWO YEARS commencing August 1, 2019.
3) The Clerk of this Court is DIRECTED to terminate Attorney Maite Diaz's CM/ECF privileges effective August 1, 2019 .
4) Attorney Maite Diaz is hereby REFERRED to the Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance of the United States District Court for the Southern District of Florida for review of Attorney Maite Diaz's ability to represent clients in a competent manner, with a recommendation to the Committee that it recommend to the District Court that Attorney Maite Diaz be disbarred. The Clerk of this Court is DIRECTED to serve a copy of this Order on the Committee.
5) Attorney Maite Diaz is hereby REFERRED to The Florida Bar for discipline as unfit to practice law, with a recommendation to The Florida Bar that Attorney Maite Diaz be disbarred. The Clerk of this Court is DIRECTED to serve a copy of this Order on the Executive Director of The Florida Bar.
6) Attorney Maite Diaz is hereby REFERRED to the Office of the United States Trustee for such investigation as the United States Trustee sees fit. The Clerk of this Court is DIRECTED to serve a copy of this Order on the United States Trustee for Region 21.
7) Attorney Maite Diaz is hereby REFERRED to the United States Attorney for the Southern District of Florida for such investigation as the United States Attorney sees fit. The Clerk of this Court is DIRECTED to serve a copy of this Order on the United States Attorney.
8) The Clerk of this Court is DIRECTED to file a Notice in each case in which Attorney Maite Diaz appears as counsel of record in substantially the form attached hereto as Exhibit 11.
Exhibit 1.1 *101 *102 Exhibit 1.2 *103 *104 *105 Exhibit 1.3 *106 *107 *108 *109 *110 *111 *112 *113 *114 *115 *116 *117 *118 *119 *120 *121 *122 *123 Exhibit 2.1 *124 *125 *126 *127 *128 Exhibit 2.2 *129 Exhibit 2.3 *130 *131 Exhibit 2.4 *132 *133 Exhibit 3.1 *134 *135 Exhibit 4.1 *136 *137 Exhibit 4.2 *138 Exhibit 4.3 *139 *140 *141 *142 *143 *144 *145 *146 *147 *148 *149 *150 *151 *152 *153 Exhibit 5.1 *154 Exhibit 5.2 *155 *156 Exhibit 5.3 *157 *158 *159 *160 *161 *162 Exhibit 6.1 *163 Exhibit 7.1 *164 Exhibit 7.2 *165 *166 *167 *168 *169 *170 *171 *172 *173 Exhibit 9.1 *174 *175 *176 *177 *178 *179 *180 *181 *182 *183 *184 *185 *186 Exhibit 10.1 *187 Exhibit 10.2 *188 *189 Exhibit 10.3 *190 *191 *192 *193 *194 *195 *196 *197 *198 *199 *200 *201 Exhibit 10.4 *202 Exhibit 10.5 *203 Exhibit 10.6 *204 *205 Exhibit 10.7 *206 *207 Exhibit 11

The common parlance of "Pandora's Box" appears to relate back to a mistranslation (whether purposeful or not) made by 16th century Dutch humanist Erasmus. Robert E. Meagher, The Meaning of Helen : in Search of an Ancient Icon (2002).

See Adversary Proceeding 18-1342-JKO, Osborne v. Pina . This adversary proceeding has now been dismissed by agreement [ECF 18 in that adversary proceeding].

And if this § 727 action had never been filed, Pandora's Jar may well have remained shut. The Court suspects that Attorney Diaz has likely avoided prior detection of her actions by a Chapter 7 Trustee, the Court, or other entities, by letting her cases be dismissed through lack of prosecution. The Court thanks Chapter 7 Trustee Les Osborne for his continued diligence and efforts in this case. The Court also expresses its gratitude toward the Debtor, Aldo Pina, for coming forward in this situation.

The Court again expresses its gratitude to Mr. Dsouza.

The Court uses "amended" as a euphemism, when it could have used "made wholesale changes" or "drastically altered."

Retention of Original Signed Documents by Registered Users. Documents that are electronically filed and require original signatures other than that of the registered user [of the Court's CM/ECF system] must be maintained in paper form for at least five years from the date of discharge of the debtor, dismissal of the case, or final resolution of all appeals pending in the case, whichever is later. This retention neither affects nor replaces any other retention period required by other laws or rules of procedure. The court may require the production of original documents for review by the court, a trustee, the U.S. Trustee, or any interested party.

The Court finds that for the purposes of this order, and considering the effect of this order, a discussion regarding the suitability of the proposed "New Business Practice" is not necessary here, other than to note that this also likely runs afoul of Local Rule 5005-4(C), which requires original signatures on retained documents.

The Court interprets a variety of actions taken by Attorney Diaz related to the production of documents to be tantamount to bad faith, and believes that she attempted to "cover up" her misdeeds.

In order to protect the integrity of any further investigations made by any investigative entity, this box shall remain in chambers indefinitely and may be made available for review. Should any investigative entity wish to review these materials, they are invited to contact chambers and request time to review or make copies of the materials, but these documents will not leave chambers, except upon further order of this Court.

It would appear unlikely that 17 case files out of 123 requested, or approximately 14% of the total required production, could have been inadvertently excluded.

Local Rule 5005-1(G)(1)(c) requires proposed orders to be submitted within seven days after a hearing.

Accordingly, the Court can make no comparison between what the debtor saw and signed with Attorney Diaz, and what was actually filed with the Court. This is a lack of production on the part of Attorney Diaz, and as discussed supra , represents a significant problem. Attorney Diaz has deprived this Court of the ability to review the missing files, either because she doesn't have the records as required by Local Rule, or she has the records and failed to produce them as required.

See In re Rene Bacallao , 08-22043-RAM.

This Court will be directing the Clerk to file a notice in each case that Attorney Diaz has ever filed. See Exh. 11.

"Given the importance of the Court's ability to rely on attorneys' representations, deterrence and punishment are both appropriate purposes for sanctions here.... As this Court relies heavily on electronic filings, the adherence of attorneys to the local rules regarding electronic signatures is imperative." 435 B.R. at 767.

The opening sequence of the 1979 American epic war film Apocalypse Now comes to mind.

See , Ronald R. Peterson, Criminal Liability for the Bankruptcy Practitioner , Chapter 16 in Attorney Liability in Bankruptcy , American Bar Association (2006).